## WILLIAM F. BLAKE, Appellant, v. THE BUTTE SILVER MINING COMPANY, Respondent.

1. Vested Rights in Mineral Lands.—One who makes a valid location of a mineral lode or ledge and complies with all the mining laws, both local and National, obtains a vested right to such property, of which he cannot be divested.

2. Mining Acts of 1866 and 1872.—Under the law as it stood prior to May 10, 1872, each locator was entitled to but one vein, whereas under the act of Congress of May 10, 1872, he is entitled to all veins having the top or apex within his surface lines.

3. Mining Patent under Location Made Prior to Act of May 10, 1872.—A patent of a mining claim, based upon a location made under the act of 1866, grants the Government title to the surface ground mentioned therein, subject to the right of other locators to follow any other vein or lode legally held under locations made prior to the act of May 10, 1872.

4. Right to Follow Unpatented Vein into Patented Ground.—The owner of a vein located prior to May 10, 1872, and who was in the possession thereof at such date, has the right to follow his vein within the patented surface ground of another.

Appeal from the Third Judicial District Court.
The facts are stated in the opinion of the court.

*Tilford & Hagan* and *J. R. McBride*, for appellant.
Only one point is involved herein.

Can the owner of a vein, located prior to May 10, 1872, and who was in the possession thereof at such date, follow his vein within the surface ground of another, even though such surface ground be patented?

The Butte Patent was issued October 17, 1874, and, as shown by "Exhibit A," crossed the north end of the Oregon Mining Claim. There is no dispute as to the fact that the Oregon vein lies wholly within the side lines of the Oregon location, but in following this vein to the end lines of his location, the appellant must pass under or into the patented ground of the respondent.

Appellant submits that no patent can grant larger or more extended rights or privileges than are granted by the statute under which such patent is issued.

Both locations in controversy were located prior to the passage of the act of May 10, 1872. The patent was issued after said date.

We submit that by the terms of the patent itself, appellant is entitled to his vein within the surface ground of the Butte Patent. Statutes at Large, vol. 14, p. 252; same, §§ 3 and 4.

By section 3, of the act of 1866, no patent can be issued for more than one vein. Act of 1866, § 3.

The act of May 10, 1872, reserves all rights or interests in mining property acquired under existing laws. Act of 1872, § 16.

Section 14, of the same act, gives an instance of what was intended when two or more veins intersect, etc. Surely they must intersect or unite under the surface ground of one of the claimants. Act 1872, § 14; Same, § 9; Same, § 3.

As early as June 10, 1872, the Commissioner of the General Land Office held that the right of a party to a vein claimed

adversely on May 10, 1872, was in no way impaired by the act of that date. Copp, pp. 83, 84, 27–29; *Robertson* v. *Smith*, 1 Mon. 410; *Chapman* v. *Toy Long*, 3 Sawyer, 135.

*Bennett & Harkness*, for respondent.

The Butte was located August 19, 1870, and patented October 17, 1874.

The Oregon was located September 20, 1871, and is not patented.

The map shows the relative locations, and respondents were working within the Butte patented grounds.

There is no opening on the vein, showing an apex in the Oregon claim westerly of its discovery point, but for the purposes of the appeal the apex is assumed to run westerly from the discovery point on the center line of the Oregon.

The conflict area was never located, possessed or worked as part of the Oregon claim, hence the vein in that ground cannot be held without the surface inclosing it at the apex.

The clause in the patent, to which reference is made in appellant's brief, is neither an exception nor reservation, and effects nothing by its own force, but only refers to some contingent adverse right, which the commissioner supposed might exist under his construction of the law. If it was in form a good exception or reservation, it would still be inoperative because there is no subject matter to apply it to—no vein legally held by other parties under a location made prior to May 10, 1872.

BOREMAN, J., delivered the opinion of the court.

The contest in this case is between the Oregon Mining Claim and the Butte Mining Claim. Both locations were made prior to the enactment of the law of 1872, respecting mining locations. The Butte was prior in time, as it was located on the 9th day of August, 1870, and the Oregon was located on the 20th day of September, 1871. The Butte Claim was afterwards patented, and against the procuring of which patent the Oregon claimants did not protest. The sur-

face grounds of these claims conflict, but the Butte Lode and the Oregon Lode are separate and distinct veins. The Oregon Lode extends within the boundaries of the Butte location, and hence the respondent lays claim thereto. The respondent began work upon the Oregon Lode, but within the boundaries of the Butte Patent. Thereupon the appellant obtained a temporary injunction, which, upon motion of respondent, was dissolved. From the order dissolving the injunction this appeal is brought.

A person who makes a valid location of a mineral ledge or lode, and complies with the laws and the local mining rules in respect thereto, obtains a vested right to such property, of which he cannot be divested.

The act of the 10th of May, 1872, says "that nothing contained in this act shall be construed to impair, in any way, rights or interests in mining property acquired under existing laws." 17 U. S. Statutes at Large, p. 96, § 16; U. S. Rev. Stat., § 2344.

The law of 1872 says further, that Mining claims "heretofore located shall be governed as to length along the vein or lode by the customs, regulations and laws in force at the date of their locations." 17 U. S. Statutes at Large, p. 96, § 2; U. S. Rev. Stats., § 2320.

Under the law as it stood prior to the act of 10th May, 1872, there is no question as to what the relative rights of the parties would have been, for under that law each locator was entitled to but one vein, whereas under the law of 1872 he is entitled to all veins having the top or apex inside his surface lines. The only question is as to whether the law of 1872 changes these relative rights.

The application for patent was based upon a location made under the law of 1866, which gave the party but one vein, and prior to the law of 1872 the rights of parties claiming other veins could not have been affected by any patent that the applicant could obtain. These rights of plaintiff to this separate vein being, by the last section of the act of 1872, as we have

seen, expressly reserved and protected from any harm by that act, it was not necessary that he should protest. Had he protested, he could have secured no more than is secured to him by the law without his protesting.

Under the law of 1866 he had the right to the full length of his claim as located along the vein. As that right is not impaired in any way by the law of 1872, the appellant still has that right.

Nor do we see that it was necessary that he should have done work on that part of his vein embraced within the surface boundaries of the respondent. It is not denied that this portion of the vein was within his location claim. He had made his location, according to law and mining rules, and the doing of work upon any part thereof, and being in possession thereof when such work was done, and claiming to the full extent of his location, would be sufficient. The appellants, therefore, had under the statute the right to that part of the Oregon Lode which entered the land of respondent, and the respondent had no right whatever thereto.

But the patent itself, which the respondent sets up as the basis of his action, does not purport to grant the Oregon vein to respondent, but it says that the grant is "subject to the right of other parties to follow any other vein or lode, with its dips, angles and variations, legally held under a location made prior to such date."

If this provision had been left out of the patent, the position of the parties would not have been affected, as their rights are governed by the law. But when a patent is presented which, on its face negatives the claim of the patentee to other valid locations, it would seem that respondent's want of title to any such other vein was clearly manifest.

For the reasons given, we think that the order of the court below should be reversed with costs.

EMERSON, J., concurred.

SCHAEFFER, C. J., delivered the following dissenting opinion: This is an appeal from the order dissolving a restraining

order and refusing an injunction. The facts as agreed upon by stipulation were as follows, to-wit:

The Butte mining claim, now owned by the respondents, was located on the 19th of August, 1870.

The Oregon mining claim, now owned by the appellant, was located September, 1871. Both claims were worked by their respective claimants as required by law. The Butte claim was conveyed by United States patent to its claimants on the 17th of October, 1874. The Oregon claim has not been patented.

The Oregon claim was located across the Butte claim on the surface, but there was no protest or adverse claim filed when the Butte party applied for a patent, and the whole surface, as claimed by the Butte party, is included in the patent issued to the respondents, with a provision in the patents as follows: " That the grant hereby made is restricted to the land herein-before described as lot No. 42, with twenty-four hundred (2400) linear feet of the Butte mine, vein, lode, ledge or deposit, for the length aforesaid, throughout its entire depth, as aforesaid, together with all other veins, lodes. ledges or deposits throughout their entire depth as aforesaid, the tops or apexes of which lie inside of the exterior lines of said survey, as against all persons claiming under locations made upon such other veins, lodes, ledges, or deposits, subsequent to May 10, 1872; but subject to the right of other parties to follow any other vein or lode, with its dips, angles and variations, legally held under a location made prior to such date." It is further stipulated and agreed that the vein or lode upon which the Butte location was made is different from that found in the area in conflict; and that the Oregon location was made on the vein or lode which is found in the area in conflict, but several hundred feet east of the Butte surface ground; and that the course of the vein is westerly from the Oregon location or discovery, and in its course enters and nearly crosses the Butte patented ground.

The appellant disclaims any right to the surface area in con-

flict, but insists that he has the right to follow his vein on its course, to the extent claimed by him, under his location notice, which would take it nearly across the patented ground of the repondents. On the contrary, the respondents insist that, as the appellant did not protest or file an adverse claim against respondents' application for a patent, and as he confessedly has no right to the surface included within respondents' patent, the easterly side line of the Butte mine becomes the western end line of the Oregon claim, and the appellant has no right to follow his vein on its course or strike beyond the eastern side line of respondents' mine.

By the act of Congress, approved July 26, 1866, it is provided in Section 1, " That the mineral lands of the public domain, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and occupation by all citizens of the United States," etc. Section 2, " That whenever any person or association of persons claim a vein or lode of quartz, or other rock, in place, bearing gold, silver or copper, having previously occupied and improved the same &ast; &ast; &ast; and having expended in actual labor and improvements thereon not less than $1,000, and in regard to whose possession there is no controversy or opposing claim, it shall be lawful for the claimant to file, in the local land office, a diagram of the same &ast; &ast; &ast; and to enter such tract and receive a patent therefor, granting such mine, together with the right to follow such vein or lode, with its dips, angles and variations, to any depth, although it may enter the land adjoining, which land adjoining shall be sold subject to this condition."

Section 3 provides, That upon filing such diagram, and posting the same in a conspicuous place on the claim, together with a notice of intention to apply for a patent, the register shall publish notice for ninety days in a newspaper, and at the expiration of that time, if no adverse claim shall have been filed, it shall be the duty of the Surveyor General, upon application, to survey the premises and make a plat thereof, indorsed with his approval, etc. And upon payment for the land and

expenses of survey, etc., and proof that the diagram and notice had been posted, a patent shall issue for the same. " But said plat, survey or description shall in no case cover more than one vein or lode, and no patent shall issue for more than one vein or lode, which shall be expressed in the patent issued."

Section 6 of the same act provides, " That whenever any adverse claimants to any mine located or claimed as aforesaid, shall appear before the approval of the survey, as provided in the third section of this act, all proceedings shall be stayed until a final settlement and adjudication in the courts of competent jurisdiction, of the rights of possession of such claim, when a patent may issue as in other cases."

By the act of 1872, section 2325, Revised Statutes of the United States, the time of notice is limited to sixty days, etc., and then it provides that " If no adverse claim shall have been filed with the register and the receiver of the proper land office, at the expiration of the sixty days of publication, it will be assumed that the applicant is entitled to a patent upon payment," etc., " and that no adverse claim exists, and thereafter no objection from third parties to the issuance of the patent shall be heard, except it be shown that the applicant has failed to comply with the terms of this chapter."

Patents issued since the passage of the act of 1872 convey, under that act, to the grantees, all the surface included within the lines of their location, and all veins, lodes and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines, where no adverse rights existed on the 10th of May, 1872. §§ 2322 and 2328, Revised Statutes of United States.

Under the act of 1866, the discoverer could locate on but one lode or vein, and if he extended his surface location over more than one lode or vein, any other competent person might make a location on the vein or lode other than the one discovered and actually located by the first locator, and that would give him an opposing claim to such part of the prior location as covers or embraces the latter vein or lode, and he would

thereby become an adverse claimant to that extent; but if he neglected or refused to appear and file and prosecute his adverse claim, as required by statute, he cannot claim any right to enter the patented ground of the first locator after the patent has issued. If he had any right to do so before the patent issued, it was waived by his failure to file his adverse claim. The clause in the patent above quoted is no exception or reservation in favor of such adverse claimant, and could not be, under the law, for the reason that at the time the patent issued he had no right to follow such vein or lode, under his his location made prior to 1872. It is hard to conceive a state of facts under which this clause in the patent would be of any force or effect, as all adverse claims had to be adjusted or were waived before the patent could lawfully issue, and after the patent issued no third party could impeach it, except for the reason that the applicant had failed to comply with the terms of the law, or had committed fraud in obtaining the patent. § 2325, Revised Statutes of United States.

It is true that, under the act of 1866, the surface land taken up in connection with a linear location on the vein or lode, was not required, in the first step to secure the title, to be marked or staked on the surface, and was intended mainly for the convenient working of the mine; but that act also required the applicant for a patent to file in the land office a diagram of his claim, and such diagram was evidently intended to embrace the surface claimed, and gave notice to the public of the extent to which the applicant claimed the vein or lode discovered by him. The act of 1872 grants to the locator the exclusive right to the possession of a limited amount of surface ground, and not only the particular vein or lode located, but all veins or lodes the top or apex of which lies within the surface lines of his location. This act recognizes the pre-existing rule applied by miners to a single vein or lode, and makes it applicable to all veins or lodes found within the surface lines.

In the Eureka Case, 4 Sawyer, 324, the court says: " Our

William F. Blake v. The Butte Silver Mining Company.

opinion, therefore, is that both the defendant and the plaintiff, by virtue of their respective patents, whether issued upon locations made under the act of 1866 or under the act of 1872, were limited to veins or lodes lying within planes drawn vertically downwards through the end lines of their respective locations; and that each took the ores found within those planes at any depth, in all veins or lodes the top or apex of which lay within the surface lines of its location." In the same case, page 319, the court say: "A patent of the United States for land, whether agricultural or mineral, is something upon which its holder can rely for peace and security in its possession. In its potency it is ironclad against all mere speculative inferences." The appellant has no right to enter the patented ground on the course or strike of his vein. The restraining order was properly dissolved, and the injunction was properly refused, and these orders should be affirmed. I, therefore, cannot concur with the majority of this court in reversing the order of the district court herein.